# WESTERN ELECTRIC COMPANY *v.* MARTIN.

---

PATENTS; AUTOMATIC TELEPHONE SYSTEM; CONSTRUCTION OF CLAIMS.

While the issue in an interference case will not be strained to cover an invention to which it does not naturally apply, and in case of doubt or ambiguity, the issue will be read in the light of the specifications

in which it first appeared, real, and not artificial, distinctions must be found in the involved applications.

No. 783.   Patent Appeals.   Submitted May 16, 1912.   Decided May 30, 1912.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                    *Affirmed.*

The facts are stated in the opinion.

*Mr. DeWitt C. Tanner, Mr. Frank Toohey,* and *Mr. Charles Neave* for the appellant.

*Mr. Charles C. Bulkley* and *Mr. H. A. Swenarton* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal from the decision of the Patent Office in an interference proceeding in which priority of invention was awarded Martin.

The invention relates to an automatic telephone system. As originally declared the issue was expressed in four counts. The Examiner of Interferences awarded priority of invention as to the 1st and 2d counts to McQuarrie and Bullard, and as to the 3d and 4th counts to Martin. This decision was affirmed by the Board of Examiners in Chief, and McQuarrie and Bullard acquiesced in that decision. Martin appealed. The Commissioner sustained his appeal, and awarded priority as to the counts involved to him. Count 1 sufficiently illustrates the two counts here directly involved, and reads as follows:

"1. In a telephone exchange system, the combination with a line switching device carrying line terminals and a group of trunk terminals, of a moving contact member for said switching device, automatic means for stepping said member to any of said line terminals or the first trunk terminal of said group,

and means, actuated in case said first trunk is busy, for stepping said member to a terminal of an idle trunk line."

We also reproduce count 4, since, by acquiescing in the award of this count to Martin, McQuarrie and Bullard necessarily conceded him to have been the prior inventor of its subject-matter:

"4. In a telephone system, a plurality of lines, any one of which will serve the purpose of a calling subscriber, means including an automatic switch for automatically selecting an idle line for the calling subscriber, and means controlled at said automatic switch for supplying talking current to a subscriber's substation."

The theory upon which the Examiner of Interferences and the Board of Examiners in Chief based their decision as to counts 1 and 2 was that, inasmuch as these counts originated in the McQuarrie and Bullard application, they should be given an interpretation in harmony with that application; specifically, that the term "trunk" or "trunk line," as used in these claims, is not properly used to define a line to a substation provided with a single telephone; that the word "terminals," as used in these claims, depends upon the nature of the line to which it is connected. The Examiner was further of the opinion that "line," as used in these two claims, signifies something different from a trunk line. This reasoning was adopted by the Board of Examiners in Chief. Proceeding upon this theory, those tribunals held that the Martin application was not intended to disclose a system involving a switch containing terminals connecting with trunk lines.

The Commissioner, while admitting that if the appealed claims were to be given the restricted interpretation placed upon them by the lower tribunals, Martin was not entitled to make them, was of the opinion that the terms "lines" and "trunk lines," as used in these counts, "do not require that this technical meaning be read into them," and, further, that if so read the counts do not set forth a patentable invention over count 4.

While it is true that the issue will not be strained to cover an invention to which it does not naturally apply, and that, in case of doubt or ambiguity, the issue will be read in the light

of the specification in which it first appeared, real, and not ar-
tificial, distinctions must be found in the involved applications,
or, obviously, there will be no room for the application of the
familiar rule.   This consideration led the Commissioner to
the conclusion which he ultimately reached in favor of Martin.
An examination of count 4 discloses that it has to do with
"a plurality of lines, any one of which will serve the purpose
of a calling subscriber," and that the term "line," as used in
this count, clearly may refer to a single line or a trunk line;
in other words, the term is used in its broadest sense.   In this
connection the Commissioner said:   "As stated by the Examiner
of Interferences in respect to count 4, there appears to be no
doubt as to the right of either party to make the claim.   In
that claim the word "lines" or "plurality of lines" is used broad-
ly, and it is difficult to perceive any valid distinction between
the use of the word "line" broadly in count 4, and the use of
the word "line" in count 1, except that certain of the lines in
count 1 are provided with terminals which are called "trunk
terminals," but the equivalent of trunk terminals are clearly
common to the structures of both parties.   In order, therefore,
that claim 4 may be read upon the McQuarrie and Bullard
structure, and it undoubtedly does read upon such structure, if
the claim is construed broadly, the word "line" applies to a
single line or to a trunk line.   The switching mechanism re-
ferred to in both count 4 and count 1 is the same whether it is
adapted to connect a calling subscriber with a single line, a
trunk line having a single operative instrument, or one of a
series of trunk lines, that is to say, the essence of the inven-
tion, so far as the making of automatic connection is concerned,
is the same in either case, and the distinctions between the use
of the word "line" in count 4, and of "line terminals" and
"trunk terminals" found in counts 1 and 2, are, in my opinion,
verbal, rather than differences of substance.   This position is
believed to be supported by the specifications of the respective
parties."   In the Martin disclosure, after describing his inven-
tion, he says:   "In this way my improved system and apparatus
is adapted to give common battery telephone service to sub-

scribers one or more of which may have one or more telephones, any one of which will answer the purpose of the calling subscriber." And again: "From the foregoing it will be seen that I provide means for giving common battery telephone service to the subscribers of an automatic exchange wherein one or more of such subscribers may have a plurality of telephones, any one of which will answer the purpose of a calling subscriber." As pointed out by the Commissioner, if certain of the subscribers are allotted a single telephone, and one of the subscribers a plurality of lines, the function of the connector disclosed by Martin will not differ from that disclosed by McQuarrie and Bullard, and this is apparently true whether the lines served by such connector terminate in "line terminals or trunk terminals." It will be observed from an examination of the claims here in issue, that no particular "busy" test is called for therein.

McQuarrie and Bullard, relying upon their record date, took no testimony. Giving the claims the interpretation placed upon them by the Commissioner, we think it clear that the evidence of Martin establishes prior conception and reduction to practice, or, at least, prior conception followed by diligence. This entitles Martin to the award of priority. Whether, in view of this construction of the claims, there is any patentable distinction between these claims and those awarded Martin, remains for the consideration of the Patent Office. The decision is affirmed.                                    *Affirmed.*